**Tauheed BURKE, et al., Appellants**

v.

**MARYLAND AUTO INSURANCE FUND, Appellee.**

No. 03–CV–1445.

District of Columbia Court of Appeals.

Submitted March 17, 2005.

Decided Aug. 4, 2005.

Ronnie Thaxton, was on the brief for appellants.

Thomas R. Mooers, was on the brief for appellee.

Before WAGNER, Chief Judge, and TERRY and GLICKMAN, Associate Judges.

TERRY, Associate Judge:

Appellants Tauheed Burke, Dashon Sterling, and Franklin Jeffries filed this action in the Superior Court against appellee Maryland Automobile Insurance Fund ("MAIF"), seeking compensation under the uninsured motorist provision of Mr. Burke's automobile insurance policy for injuries that they suffered in an accident involving an unidentified motorist. At the close of appellants' case, MAIF moved for a directed verdict pursuant to Super. Ct. Civ. R. 50(a)(1).[1] The court granted the

1. Rule 50(a)(1) provides:

If during a trial by jury a party has been

motion and entered judgment in MAIF's favor. We affirm that judgment.

## I

On the evening of October 13, 2001, the car in which appellants were riding was involved in a rear-end collision on Interstate Route 295 in the District of Columbia. Appellants' car[2] was stopped on an entrance ramp, waiting to merge into the flow of traffic on the interstate, when it was struck from behind by another car. When appellants said they were going to call the police to report the accident, the man driving the other car "crept back into his car, got off and speeded off real quick." Then, according to Mr. Burke, "what we did, all of us, looked at his license plate. So, at that time, we wrote the license plate down, and then we called the police to figure out what we needed to do ...."[3] Appellants then went to a nearby police station and filed an accident report. All three men testified as to the damages they sustained as a result of the collision, both personal injuries and lost wages; in addition, Mr. Burke sought to recover damages for the harm done to his car.

Mr. Burke testified that he learned the identity of the registered owner of the other car,[4] but the court prevented him from revealing that person's name on the ground that it was hearsay, in that it came from an uncertified copy of a document from the Maryland Motor Vehicle Administration ("MVA"). In addition, appellants' counsel asked Mr. Jeffries to verify that the license plate he and Mr. Burke observed as the other car left the scene was traced by the Maryland MVA. In conjunction with Mr. Jeffries' testimony, appellants sought to introduce an MVA document related to the trace, which allegedly contained information that the car in question was uninsured as of May 10, 2001. The court ruled that it could not accept the document as a "certified copy," since appellants had failed to call any witness from the MVA who could authenticate the document. The court also noted that the document did not prove that the car was uninsured on October 13, the date of the accident. Appellants do not challenge the latter ruling on appeal.

## II

Appellants contend that the trial court erred when it granted MAIF's motion for a directed verdict, asserting that they "made a prima facie case for an uninsured motor vehicle accident." A directed verdict, now known as a judgment as a

---

fully heard on an issue, and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue, the Court may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

**2.** Mr. Burke is the owner of the car and is insured through MAIF. He was riding in the front passenger seat. Mr. Jeffries was driving the car that evening, and Mr. Sterling was a back seat passenger.

Appellants put a great deal of emphasis in their brief on an apparent dispute regarding the make and model of the car in which the three men were riding when the collision occurred. We agree with appellee that this factual dispute has no bearing on the present appeal.

**3.** Mr. Jeffries also testified that the driver of the other car refused to exchange insurance information with him and, instead, "just jumped in [his car] and pulled around. And then we got his tag and that's when we called the police." Mr. Jeffries said he was certain that they got the right tag number.

**4.** Appellants' counsel said in his opening statement that the car was registered to "Shameka Taylor." Ms. Taylor, however, was never called as a witness because appellants were unable to locate or serve her.

matter of law, "is proper 'if during a trial by jury [the plaintiff] has been fully heard with respect to [a claim], and there is no legally sufficient evidentiary basis for a reasonable jury to have found' in the plaintiff's favor." *Burke v. Scaggs*, 867 A.2d 213, 217 (D.C.2005) (quoting Super. Ct. Civ. R. 50(a)(1); other citation omitted). In deciding whether a directed verdict is appropriate, a court must keep in mind that it is not the trier of fact, and should therefore "take care to avoid weighing the evidence, passing on the credibility of witnesses, or substituting its judgment for that of the jury." *Corley v. BP Oil Corp.*, 402 A.2d 1258, 1263 (D.C.1979); *see Robinson v. Group Health Ass'n*, 691 A.2d 1147, 1150–1151 (D.C.1997). Thus "a verdict [for the defendant] may be directed only if it is clear that the plaintiff has not established a prima facie case." *Clement v. Peoples Drug Store, Inc.*, 634 A.2d 425, 427 (D.C.1993) (citation omitted). In other words, as long as there is "some evidence from which jurors could find" that the plaintiff has met his burden, the trial court "must not grant a directed verdict." *Abebe v. Benitez*, 667 A.2d 834, 836 (D.C. 1995) (citations omitted). On appeal, we must view the evidence in the light "most favorabl[e] to the party against whom the motion is made, and that party must be given the benefit of all reasonable inferences from the evidence." *Corley*, 402 A.2d at 1263 (citations omitted); *accord, Abebe*, 667 A.2d at 836.

■ Because appellants were seeking to recover damages based on an uninsured motorist claim against MAIF, it was their burden to show that the other vehicle involved in the collision was, in fact, uninsured. The relevant portion of the District of Columbia Code defines "uninsured motor vehicle" as a vehicle which:

(A) Is a motor vehicle which is not insured by a motor vehicle liability policy applicable to the accident;

(B) Is covered by a motor vehicle liability policy of insurance but the insured denies coverage for any reason or becomes the subject of insolvency proceedings in any jurisdiction; or

(C) Is a motor vehicle which causes bodily injury or property damage and whose owner or operator cannot be identified.

D.C.Code § 31–2406(f)(1)(A–C) (2001). Viewing the evidence, as we must, in the light most favorable to appellants, we conclude that they have failed to show that the vehicle was uninsured under any of these definitions.[5]

### D.C.Code § 31–2406(f)(1)(A)

There is very little evidence in the record concerning the car that allegedly struck Mr. Burke's car. Mr. Jeffries testified that the other vehicle was "sort of like a [Ford] Crown Victoria car." Both Mr. Jeffries and Mr. Burke said that they observed the license number as the car left the scene of the collision, and Burke said that "we" wrote it down. Finally, Mr. Burke stated that he had identified the car's registered owner, though the name of that owner was not revealed to the jury because the only evidence of that name was inadmissible hearsay. There was no testimony about the insurance status of the other car; the only evidence appellants offered on that point was the MVA document purportedly indicating that the vehicle was not insured in May of 2001, five months before the accident. That document was not admitted because there was no testimony to authenticate it, and because it did not establish whether the car was insured on the critical date in October 2001. Thus, since the only potential evi-

---

**5.** The only potentially applicable definitions in this case are those found in subsections (f)(1)(A) and (f)(1)(C); hence we need not discuss subsection (f)(1)(B).

dence of the insurance status of the other car was the excluded document, there was simply no evidence from which the jury could find that the car was uninsured within the meaning of subsection (f)(1)(A). *See Allstate Insurance Co. v. Curtis*, 781 A.2d 725 (D.C.2001) (judgment for plaintiff reversed because letters from insurance company constituted the only evidence that plaintiff offered to prove that the driver was uninsured, and those letters were admitted in error).[6]

### D.C.Code § 31–2406(f)(1)(C)

Appellants' argument on appeal focuses primarily on subsection (f)(1)(C) of the insurance statute. They claim that "[t]he plaintiffs' collective testimony proved that they were unable to ascertain the identity of the owner and operator of the vehicle .…" Although two of the plaintiffs testified that they identified the license number of the other car, appellants now assert that "none of plaintiffs' witnesses testified as to the actual license tag number." In addition, appellants note that "[t]here was no testimony that Mr. Burke and Mr. Jeffries determined to have observed the same license tag number." Nevertheless, since "[b]oth Mr. Burke and Mr. Jeffries made

reasonable efforts to learn the identity of the owner or operator," appellants now contend that "[w]ithout ascertaining the identity of the owner or operator of the vehicle that caused their injuries, plaintiffs are entitled to recovery under uninsured motorist coverage." [7]

Appellants' argument is flawed in several respects. The statute reads, simply, that a motor vehicle is uninsured if its owner or operator "*cannot* be identified." D.C.Code § 31–2406(f)(1)(C) (emphasis added). As we have said on a number of occasions, "the words of [a] statute should be construed according to their ordinary sense and with the meaning commonly attributed to them." *Peoples Drug Stores, Inc. v. District of Columbia*, 470 A.2d 751, 753 (D.C.1983) (en banc) (citations omitted). According to a widely used dictionary, the word "cannot" is "used to express either extreme negation of ability or probability." RANDOM HOUSE COLLEGE DICTIONARY 196 (Rev. ed. 1980) Thus, in the context of the statute, "cannot" implies that it would be impossible (or virtually so) to identify the owner or operator of the other car. That simply is not the case here. Two witnesses testified that they saw the license number of the car as it left

---

**6.** Appellee cites *Allstate Insurance Co. v. Miller*, 315 Md. 182, 553 A.2d 1268 (1989), as "an example of what a plaintiff must show in order to recover." In *Miller* the owner of the car testified that it was not insured; an insurance representative testified that he sent a notice of cancellation of insurance; a claims adjuster testified that she received a letter from the driver's insurance company stating that the driver was uninsured at the time of the accident; and records from the Department of Motor Vehicles showed that the car's insurance had been canceled prior to the accident.

**7.** Appellee asserts in its brief that appellants "did not offer any evidence regarding … any effort to locate the driver." Appellee's counsel also argued this point to the court during the bench conference concerning the admissi-

bility of the MVA document. This court has not yet decided "whether D.C.Code § [31–2406(f)(1)(C)] requires a claimant to make reasonable efforts, under the circumstances, to learn the identity of the owner or operator of the motor vehicle causing the damage before recovering for an injury under subsection (C) on the ground that the owner or operator 'cannot' be identified." *Price v. Doe*, 638 A.2d 1147, 1150 n. 2 (D.C.1994). But we need not decide that issue in this case either, since there was testimony that appellants did in fact identify the owner of the other car. Evidence of the owner's identity was excluded, but not because of any inability of the appellants to identify the owner. On the contrary, it is clear that they did identify the owner, but they failed to lay a proper foundation for that evidence to be admitted.

the scene, and at least one of them wrote it down. In addition, Mr. Burke plainly stated that he had in fact identified the registered owner of the car. This testimony alone refutes any assertion that the owner of the car "cannot" be identified, because in fact she was.[8]

Appellants' argument that there was no testimony as to what the license number was, or whether the two witnesses both observed the same number, is really beside the point. Appellants never attempted to elicit testimony or to introduce any other evidence about the license number, even though it was up to them to do so as part of their obligation to prove that the car was uninsured. Since there was no evidence from which the jury could find that the car's owner or operator could not be identified, thereby bringing the case within subsection (f)(1)(C), the court committed no error in granting MAIF's motion for a directed verdict. Appellants lost their case because of a failure of proof, not because of any error by the trial court.

The judgment is

*Affirmed.*

---

8. Indeed, the jury would have learned the owner's name if appellants had produced a witness who could have authenticated the MVA document. Thus appellants' statement that "plaintiffs' primary theory for recovery at trial was that they were unable to determine the identity of the negligent vehicle's owner or operator" is not supported by the record. Appellants attempted, without success, to introduce evidence—*i.e.,* the MVA document— that might have established the name of the registered owner and insurance status of the car. They adopted this so-called "primary theory" only after the court ruled the document inadmissible.